Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Monday, November 01, 2010 3:59:24 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID ALAN WATSON, | ) | Case No. 10-1292 |
| | ) | |
| Debtor. | ) | Chapter 7 |

## MEMORANDUM OPINION

Stonewall Jackson Memorial Hospital seeks to dismiss the Chapter 7 bankruptcy petition filed by David Alan Watson (the "Debtor") on the basis that the Debtor filed his petition in bad faith. The Hospital asserts that this case is essentially a one-creditor dispute and the Debtor has the ability to pay the amount owed to the Hospital.

For the reasons stated herein, the court will grant the Hospital's motion.

## I. BACKGROUND

On June 10, 2004, the Hospital and the Debtor executed an Income Guarantee Agreement and accompanying promissory note whereby the Debtor, a physician, agreed to commence the private practice of medicine in the Hospital's service area for a minimum of 72 months in exchange for the Hospital's promise to supplement the Debtor's income. The supplement was for $120,000 per year, payable in monthly installments of $10,000. The Hospital also agreed to advance money to cover net practice losses during any month. All amounts advanced were considered loans to be repaid by the Debtor. The maximum amount of the "loan" was $600,000.

At the end of 36 months, and every 12 months thereafter, the Hospital agreed to deem 25% of the unpaid loan balance as earned income and waive the amounts as being due. At the end of 72 months, all amount of the outstanding loan would be deemed earned and collection waived. The Income Guarantee Agreement and/or accompanying note were subsequently modified by addendum and by an October 27, 2006 employment agreement.

On April 30, 2009, the Hospital terminated the Debtor's employment without cause pursuant to a specific clause in the October 27, 2006 employment agreement. The Debtor hired an attorney to represent him with regard to his termination and liability under the Income Guarantee Agreement. In correspondence to the Debtor's attorney, dated May 15, 2009, the Hospital offered to continue the debt forgiveness component of the Income Guaranty Agreement if the Debtor agreed to continue his medical practice in the service area of the Hospital. The Hospital even helped arrange a "transfer" of the Debtor to Glenville, West Virginia where he now works for Minnie Hamilton Health Center, which is within the Hospital's service area. Although the Debtor "transferred" jobs, the details of the Hospital's offer of compromise were never agreed upon.

On June 4, 2009, the Debtor filed a complaint with the West Virginia Human Rights Commission alleging that his termination was the result of age discrimination. The Debtor testified that, although he completed the paperwork at the request of his attorney, neither he nor his attorney ever meant for that complaint to be filed. Nevertheless, on October 6, 2009, the Debtor's attorney made an offer of settlement to the Hospital that he would drop the Human Rights Commission complaint if the Hospital agreed that all claimed debt owed by the Debtor would be forgiven and the forgiveness would be evenly spread out over 2009, 2010, 2011, and 2012. The Hospital, however, refused to consider the settlement offer before the Human Rights Commission made its ruling. On November 24, 2009, the Debtor withdrew his complaint with the Human Rights Commission.

On April 6, 2010, the Hospital made a settlement offer to the Debtor under which it would accept $320,358.17, plus accrued interest, payable in monthly installments not to exceed five years. Two days later, the Debtor rejected the Hospital's settlement offer, and made a counter-offer of $80,000 in eight equal quarterly payments. The Hospital rejected the counteroffer and proposed binding arbitration. The Debtor rejected arbitration, but, against the advice of his counsel, sent an email to the Hospital's attorney agreeing to mediation. The parties, however, were not able to reach an agreement on a mediator.

On June 25, 2010, the Hospital sent a letter providing notice to the Debtor that it was terminating the Income Guarantee Agreement on the basis that the Debtor had failed to practice medicine in the Hospital's service area for the required 72-month period. As of the date of the letter, the Hospital contended that the Debtor owed it $600,000.

Four days earlier, on June 21, 2010, the Debtor filed his Chapter 7 bankruptcy petition. When the Hospital filed its proof of claim in this case, it claimed that only $223,703.63 was owed to it under the Income Guarantee Agreement. After reviewing the Hospital's proof of claim, the Debtor filed an adversary proceeding against the Hospital alleging that the Hospital should be liable for sanctions under 11 U.S.C. § 105(a) on the grounds that it filed a false or fraudulent proof of claim. Avah Stalnaker, the Hospital's associate administrator, testified that the Hospital received an additional settlement offer after the filing of the adversary proceeding to withdraw the complaint if the Hospital forgave all amounts due under the Income Guaranty Agreement. The Hospital refused.

In filing Schedule D, his schedule of secured debts, the Debtor listed: (1) a $63,300 debt owed to United National Bank secured by a first deed of trust on his real property, (2) a $56,039 debt owed to Fairmont Federal Credit Union secured by a second deed of trust on his real property, and (3) a $25,457 debt owed to Fairmont Federal Credit Union secured by an automobile. On Schedule F, his schedule of unsecured claims, the Debtor listed only two debts: a $96,808 student loan obligation and a disputed debt owed to the Hospital for $600,000.

The Debtor claims that no equity exists in his home for a Chapter 7 trustee to administer and he stated at trial that he will continue making monthly payments on the debts secured by his home. The Debtor executed a reaffirmation agreement with respect to the debt owed to Fairmont Credit Union secured by his automobile, and, the Debtor's bankruptcy attorney stated he will not seek to discharge his student loan debt under 11 U.S.C. § 523(a)(8) on grounds of undue hardship. Accordingly, the only tangible benefit that the Debtor seeks to obtain by filing bankruptcy is to obtain a discharge of his debt to the Hospital.

On the Debtor's Schedule I, his schedule of current income, he claims gross monthly earnings of $13,749.99, and gross income for his non-filing spouse of $5,229.58. After payroll deductions the Debtor's net income is $9,401.17, and his non-filing spouse has net monthly pay of $3,044.57. On Schedule J, the schedule of current monthly expenditures, the Debtor includes, among other things, a $1,268 mortgage payment, $1,027 in transportation costs, a $616 auto payment, a $610 student loan payment, and $700 in food expenses, which, when combined with other expenses, totals a monthly household budget of $6,567.00. Thus, the Debtor calculates his net monthly disposable

income at $5,878.74.

The Debtor testified that he lives in a modest home, drives modest vehicles, does not take extravagant vacations, and, apart from a piano, does not own any luxury items such as boats or vacation homes. At the Debtor's meeting of creditors, he turned over his non-exempt assets to his Chapter 7 trustee, which consisted of about $37,000 in a bank account.

## II. DISCUSSION

The Hospital considers the Debtor's Chapter 7 bankruptcy filing to be based on a one-creditor dispute, and also believes that the Debtor has the means to pay the debt owed to it outside of bankruptcy. Thus, the Hospital requests that the court dismiss the Debtor's bankruptcy case on the grounds that the Debtor filed his petition in bad faith.

Under 11 U.S.C. § 707(a), "the court may dismiss a case under this chapter only after notice and a hearing and only for cause . . . ." Only three examples of "cause" are provided by the statute: "(1) unreasonable delay by the debtor that is prejudicial to creditors; (2) non payment of any fees and charges . . ., and (3) failure of a debtor . . . to file . . . the information required by paragraph (1) of section 521 . . . ." These three examples, however, "are illustrative and not exclusive." *Smith v. Geltzer*, 507 F.3d 64, 72 (2d Cir. 2008); *see also* 11 U.S.C. § 102(3) (the term "includes" is not limiting); *Dionne v. Simmons (In re Simmons)*, 200 F.3d 738, 743 (11th Cir. 2000) (the § 707(a) examples of cause are non-exclusive); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 831 (8th Cir. 1994) (same).

Although the Court of Appeals for the Fourth Circuit has not specifically addressed whether a debtor's bad faith may be cause to dismiss a Chapter 7 bankruptcy petition under § 707(a), lower courts in this Circuit have addressed the issue and have concluded that cause exists under § 707(a) to dismiss a petition that is filed in bad faith. *E.g.*, *McDow v. Smith*, 295 B.R. 69, 78 (E.D. Va. 2003) ("[U]nder § 707(a), a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal in the sound discretion of the bankruptcy court."); *In re Remember Enters.*, 425 B.R. 757, 762 (Bankr. M.D.N.C. 2010) (same); *McDow v. Dudley (In re Dudley)*, 405 B.R. 790, 800 (Bankr. W.D. Va. 2009) (same); *In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008) (same).

In *Carolin Corp. v. Miller*, 886 F.2d 693, 698-700 (4th Cir. 1989), a Chapter 11 case where

dismissal was sought under 11 U.S.C. § 1112, the Fourth Circuit concluded that the "dismissal for cause" provision in Chapter 11 includes dismissal for filing the petition in bad faith. Moreover, the Fourth Circuit recognized that a general good faith requirement exists for all debtors filing for bankruptcy – "an implicit prerequisite to the right to file [a bankruptcy petition] is 'good faith' on the part of the debtor, the absence of which may constitute cause for dismissal." *Id.* at 698. Thus, it appears that the Fourth Circuit would agree with other circuit courts that have found that cause to dismiss a bankruptcy petition under § 707(a) includes bad faith conduct. *See, e.g.*, *Tamecki v. Frank (In re Tamecki)*, 229 F.3d 205, 207 (3d Cir. 2000); *In re Zick*, 931 F.2d 1124 (6th Cir. 1991); *Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829 (8th Cir. 1994).

Furthermore, after the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Congress rewrote § 707(b) of the Bankruptcy Code – dealing with individual debtors whose debts are primarily consumer debts – and added § 707(b)(3)(A)(i), which directs the court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's situation demonstrates abuse." Considering that Chapter 7 consumer bankruptcy cases are now explicitly subject to a bad faith analysis, it would make little sense to treat differently those Chapter 7 cases where the debts are primarily business debts.[1] In addition, as recently reiterated in *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007), the "principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" Allowing an atypical debtor who files a Chapter 7 petition in bad faith to remain in Chapter 7 on the grounds that § 707(a) does not include bad faith as a type of "cause" sufficient to dismiss the filing of the petition contravenes the principal purpose of the Bankruptcy Code.

Consequently, like *McDow*, 295 B.R. at 78, this court holds that a debtor's bad faith acts or omissions may, in the totality of the circumstances, constitute cause for dismissal under 11 U.S.C. § 707(a) in the sound discretion of the bankruptcy court.

Factors for a court to consider in dismissing a case for bad faith under the totality of the

---

[1] In this case an issue exists regarding whether the Debtor's case consists primarily of consumer debts or business debts. If the Debtor's case consists primarily of consumer debts, then § 707(b) would apply. For purposes of this memorandum opinion and accompanying order, the court is assuming, without deciding, that the Debtor's obligations are primarily business debts, and, therefore, the court is analyzing the Hospital's motion under § 707(a).

circumstances vary depending on the facts of the individual case. As the Court of Appeals for the Sixth Circuit stated in *Zick*, 931 F.2d at 1127-28, it found merit in the "smell test," which focuses on whether resort to the protection of bankruptcy laws is proper. Whatever factors a bankruptcy court relies on, the Sixth Circuit instructed that those factors be set forth in the bankruptcy court's decision. *Id.* at 1128. In *McDow*, 295 B.R. at 79 n.22, the district court found that the following factors are typically considered:

> (1) The debtor's concealment or misrepresentation of assets and/or sources of income, such as the improper or unexplained transfers of assets prior to filing;
>
> (2) The debtor's lack of candor and completeness in his statements and schedules, such as the inflation of his expenses to disguise his financial well-being;
>
> (3) The debtor has sufficient resources to repay his debts, and leads a lavish lifestyle, continuing to have excessive and continued expenditures;
>
> (4) The debtor's motivation in filing is to avoid a large single debt incurred through conduct akin to fraud, misconduct, or gross negligence, such as a judgment in pending litigation, or a collection action;
>
> (5) The debtor's petition is part of a "deliberate and persistent pattern" of evading a single creditor;
>
> (6) The debtor is "overutilizing the protection of the Code" to the detriment to his creditors;
>
> (7) The debtor reduced his creditors to a single creditor prior to filing the petition;
>
> (8) The debtor's lack of attempt to repay creditors;
>
> (9) The debtor's payment of debts to insider creditors;
>
> (10) The debtor's "procedural gymnastics" that have the effect of frustrating creditors;
>
> (11) The unfairness of the debtor's use of the bankruptcy process.

*Id*.

In this case, (1) no concealment or misrepresentation of assets and/or sources of income, or the transfer of assets is apparent in the record; (2) no lack of candor and completeness in the Debtor's

statements and schedules is evident; (3) the Debtor has sufficient resources to repay his debts, but does not lead a lavish lifestyle or continue to have excessive expenditures; (4) the Debtor's motivation in filing is to avoid the debt allegedly owed to the Hospital, but that alleged debt was not incurred through conduct akin to fraud, misconduct, or gross negligence; (5) the Debtor's bankruptcy filing fits within a pattern of attempting to avoid paying what the Hospital believes to be owed under the Income Guarantee Agreement – beginning with informal discussions, cumulating in a complaint with the Human Rights Commission, and ending with an agreement to mediate before filing bankruptcy; (6) the Debtor is attempting to utilize the Bankruptcy Code to avoid paying his debt to the Hospital; (7) no evidence exists that the Debtor reduced his creditors before filing bankruptcy; (8) the Debtor has made payments on his reoccurring debts, and other than student loans, he does not have any meaningful unsecured debt (apart from that allegedly owed to the Hospital), and he made an attempt to settle with the Hospital for about $80,000 before filing bankruptcy; (9) no evidence suggests that the Debtor has paid insider creditors; (10) the Debtor has engaged in some procedural gymnastics in his attempts to deal with the alleged debt owed to the Hospital ranging from informal settlement options, a complaint with the Human Rights Commission for age discrimination, the withdrawal of that complaint, followed by additional settlement discussions and an agreement to mediate before filing bankruptcy; and (11) the Debtor's use of the bankruptcy system is unfair insofar as the Debtor is seeking to use his bankruptcy filing as a sword to avoid repaying a single debt while the Debtor enjoys substantial monthly disposable income.

Accordingly, after reviewing the above eleven factors, the court concludes that the Debtor's bankruptcy filing is essentially a one-creditor dispute, filed after about a year of litigation and settlement discussions, aimed solely at avoiding the repayment of any amount purportedly due on the Debtor's obligation to the Hospital under the Income Guaranty Agreement. As the Debtor testified, he told the Hospital that if it pushed him too hard, he would have no choice but to file bankruptcy. While contradictory, the Debtor stated on one hand that he believed he owed the Hospital about $600,000, and he also stated the he believed that he owed the Hospital less than the $223,703 proof of claim that it filed.[2] Now that he filed bankruptcy, however, he testified that he

---

[2] The Debtor believes that his continued medical practice – rendered within the Hospital's service area – should constitute his performance under the Income Guaranty Agreement such that

was not willing to pay the Hospital anything other than his non-exempt assets because "the time for negotiation has passed."

Based on the Debtor's Schedules I and J, if the Debtor were to devote his $5,878.74 in monthly disposable income over a five year plan to the repayment of his creditors, a sum of $352,724 would be available to pay his debts. Assuming that the Hospital's proof of claim is correct and that the Debtor owes it $223,708, the Debtor has the means to repay the Hospital in full.

In sum, a central purpose of the Bankruptcy Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934). This opportunity for a completely new beginning, however, is limited to the "honest but unfortunate debtor." *Id.* In this case, the Debtor is honest, but not unfortunate – in the financial sense – in that the Debtor has ample monthly income after meeting his living expenses. Allowing the Debtor to turn over $37,000 in non-exempt assets for the repayment of his creditors when the Debtor does not need Chapter 7 bankruptcy protection is more akin to giving the Debtor a head-start rather than a fresh start. Consequently, based on the totality of the circumstances of this case, the court finds that the Debtor is not the type of individual that Chapter 7 of the Bankruptcy Code was enacted to protect and the use of the Chapter 7 bankruptcy laws in this case is not proper.

### III. CONCLUSION

For the above-stated reasons, the court will enter a separate order that grants the Hospital's motion to dismiss on the condition that the Debtor will have 15 days to convert his case to one under Chapter 13, if he is eligible, or to one under Chapter 11.

---

the Hospital should forgive amounts due.